DECISION
{¶ 1} Relator, Abbott Foods, Inc., has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its award of temporary total disability compensation beginning March 15, 2003, and its finding that claimant, Anthony Fiero, did not voluntarily abandon his employment.
 {¶ 2} This matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections have been filed to the decision of the magistrate.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, we adopt that decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
Bowman and Bryant, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Abbott Foods, Inc., : Relator, : v. : No. 03AP-1042 Industrial Commission of Ohio: (REGULAR CALENDAR) and Anthony Fiero, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 8, 2004 William W. Johnston, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Craig T. Lelli, for respondent Anthony Fiero.
IN MANDAMUS
 {¶ 4} In this original action, relator, Abbott Foods, Inc. ("Abbott Foods"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of temporary total disability ("TTD") compensation beginning March 15, 2003, and its finding that respondent Anthony Fiero ("claimant") did not voluntarily abandon his employment with respect to a March 14, 2003 incident at work that resulted in his being fired from his employment with Abbott Foods.
Findings of Fact:
 {¶ 5} 1. On December 17, 2002, claimant sustained an industrial injury while employed as a laborer at a warehouse operated by Abbott Foods, a self-insured employer under Ohio's workers' compensation laws. Abbott Foods certified the industrial claim (02-884175) for: "sprain lumbosacral."
 {¶ 6} 2. Following the December 17, 2002 injury, Abbott Foods offered claimant a light-duty position and claimant returned to work at Abbott Foods in that light-duty position.
 {¶ 7} 3. On February 21, 2003, claimant received a written reprimand from Abbott Foods regarding an incident occurring February 19 and 20, 2003. The written reprimand describes the incident as follows:
* * * Mr. Fiero was told on 2/19/03 @ 2:00 PM to call Med Ohio, set up an appointment for late 2/19/03 or [e]arly 2/20/03. Instructed to call me back to inform me when appointment was. He has not called me [and] waited to call Med Ohio until 2/20/03 A.M. — Told them that he would be in after 11:00 A.M.
 {¶ 8} 4. Abbott Foods' written reprimand form lists possible offenses for which the employee can be warned. "Insubordination" is among the listed offenses. However, Abbott Foods did not select insubordination. For the reprimanded offense, Abbott Foods wrote: "non compliance of workers comp procedures."
 {¶ 9} Abbott Foods' written reprimand form also provides for "Supervisor Remarks" which prompted the following handwritten remarks:
Mr. Fiero was previously warned verbally about being non-compliant — Any further incidents pertaining to the matter may result in termination[.]
 {¶ 10} The written reprimand form contains a signature line for the employee and the "immediate supervisor." Claimant signed the written reprimand However, there is no signature above the "immediate supervisor" line. Instead, below the line there is the signature of human resources manager, Cynthia Alls.
 {¶ 11} 5. By letter dated March 20, 2003, Abbott Foods terminated claimant's employment effective March 20, 2003. Abbott Foods' March 20, 2003 termination letter is signed by Sheilah Flad over a signature line for "Sheilah Flad, Benefit Coordinator." The letter reads:
I have now been informed that on Friday March 14, 2003, you clocked in at 8:51 A.M. and left at 10:24 A.M. * * * As you know, you are required to inform me, as your light duty supervisor, if it is necessary for you to leave the workplace early. You did not contact me nor did you contact, Jay Crabtree, Jim Fodey or James Baldridge, warehouse supervisors and employees that you had worked with.
According to the Abbott Foods, Inc. Handbook, page 23, you are "not to leave your job during normal working hours without obtaining permission from your supervisor[.]" * * * I know you are aware of this provision because you signed the "Acknowledgement of Receipt[.]" * * *
In our conversation of February 21, 2003 you were given a written reprimand, * * * which placed you on notice that any further incidents or violations would result in disciplinary actions, up to and including discharge.
Accordingly, due to your multiple violations of company policy and procedure, you are hereby terminated effective March 20, 2003. * * *
 {¶ 12} 6. The record before this court contains a "Note to File" dated March 20, 2003, signed by Sheilah Flad. It states:
Anthony Fiero arrived on time for his meeting scheduled at 3:00 P.M. Along with myself, Cynthia Alls, [Human Resources] Manager and Jay Crabtree, Warehouse Operations Manager were in attendance. We explained to Anthony why he was asked to meet with us. We reviewed the fact that on February 21, 2003 when he was given his written warning, he was told numerous times how important it was to report any absences. Mr. Fiero affirmed that fact. We proceeded to ask why he clocked out at 10:30 A.M. and never returned. He stated that he was going to lunch and told Jim Baldridge. When asked why he didn't return, he stated that something came up and he couldn't come back. We then asked why he didn't call me when he knew how important it was to report his absences? He stated he tried but I didn't answer my phone. I asked why he didn't leave a message and he couldn't give a definitive reason. I explained that is why there is voicemail on my phone, he needed to leave me a message. He had no explanation for this.
 {¶ 13} 7. The record contains a "Note to File" dated March 20, 2003, signed by Cynthia Alls. It states:
I was part of the meeting that was held on March 20th with Anthony Fiero, Sheilah Flad and Jay Crabtree. I felt my presence was necessary as Sheilah's supervisor, Jay Crabtree was present because he is Director of Operations and of course Sheilah was there as the Workers' Compensation administrator. When an associate is on "Light Duty" Sheilah takes on the responsibility of monitoring work restrictions and work schedules; I wanted to make sure Mr. Fiero understood this. Therefore I asked Mr. Fiero did he understand he was to report matters concerning his job attendance and work to Sheilah. He said yes. The conversation went as described in Sheilah Flad's note to file.
 {¶ 14} 8. In the meantime, on a C-84 dated March 17, 2003, treating chiropractor James Appell certified a period of TTD from March 17, 2003 to an estimated return-to-work date of June 18, 2003.
 {¶ 15} 9. The record also contains a June 16, 2003 memorandum signed by James Baldridge of Abbott Foods. The Baldridge memorandum states:
I did not receive a phone call on or about 3/14/03 from Anthony Fiero stating that he was leaving work early. If I did receive such a call, I would have referred him to Sheilah Flad who is his supervisor while he is on light duty.
 {¶ 16} 10. Following a June 24, 2003 hearing, a district hearing officer ("DHO") issued an order stating:
Temporary total disability compensation shall be paid from 03/07/2003 through 03/20/2003, inclusively. The District Hearing Officer finds the injured worker voluntarily abandoned his employment, pursuant to [State ex rel. Louisiana-Pacific Corp.v. Indus. Comm. (1995), 72 Ohio St.3d 401], when he was terminated on 03/20/2003.
The District Hearing Officer finds the injured worker left the work place on 03/14/2003 during his normal working hours without obtaining permission from or informing his supervisor. This action is expressly prohibited in the employment manual and is defined as a dischargeable offense.
The 03/20/2003 termination letter from Ms. Flad, the Benefit Coordinator, indicated that the injured worker left work at 10:24 A.M. without contacting a supervisor or her. According to Ms. Flad's testimony today and her memo of 03/20/2003, the injured worker left at 10:30 A.M. on 03/14/2003 and never returned to work that day, nor did he leave a message concerning his absence with Ms. Flad.
The District Hearing Officer finds the injured worker left work on 03/14/2003, in violation of the express terms of the employer's manual. This was a terminable offense, and the injured worker was aware of this, or should have been, as he executed a receipt acknowledgement for the manual on 10/03/2002. The injured worker, therefore, voluntarily abandoned his employment and is not entitled to temporary total disability compensation from 03/20/2003 through 06/24/2003.
 {¶ 17} 11. The DHO's order was administratively appealed. A staff hearing officer ("SHO") heard the administrative appeal on August 13, 2003. Ms. Flad and Mr. Baldridge appeared at the August 13, 2003 hearing to present testimony on behalf of Abbott Foods. Unfortunately, the hearing testimony was not recorded. Following the hearing, the SHO issued an order stating:
No voluntary abandonment of employment is found. The employer argues that the injured worker violated a written work rule when he left the work area without obtaining permission from his supervisor. The termination letter to the injured worker is dated March 20, 2003, and is on file. The letter states that the injured worker received a written reprimand on February 21, 2003 and that the injured worker was told at that time that any further incidents or violations would result in his termination.
Ms. Flad for the employer testified that the injured worker received the first reprimand because he didn't go to the doctor when he was told to go. Specifically, the injured worker complained of severe back pain and asked to go home. Ms. Flad states that she told the injured worker to go to the doctor immediately. The injured worker did not go to the doctor until the next day. No violation of any work rule is found in this incident by the injured worker.
The second incident occurred on March 14, 2003, when the injured worker left work. The injured worker testified that he told Mr. Baldridge that he was leaving. Mr. Baldridge did not specifically deny the injured worker's testimony, but denied that he was the injured worker's supervisor. He did state that while the injured worker was on light duty that he showed the injured worker what to do.
Based on this testimony, it is not clear that the injured worker violated any work rule. The injured worker went from work to a doctor's appointment. It appears that he may have left earlier than he needed, but it is not clear that he violated a specific work rule. The injured worker reasonably could have thought of Mr. Baldridge as a supervisor.
The injured worker's testimony was not very credible. In reviewing various doctors' reports on file, it appears the injured worker has not cooperated fully with his physician. It further appears that the injured worker has not cooperated fully with his employer, but the employer has not established that the injured worker voluntarily abandoned his job.
 {¶ 18} 12. On September 30, 2003, another SHO mailed an order refusing the administrative appeals from the SHO's order of August 13, 2003.
 {¶ 19} 13. On October 20, 2003, relator, Abbott Foods, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 20} The main issue is whether there is some evidence to support the commission's finding that relator failed to show that claimant violated the written work rule for which he was fired and, therefore, did not voluntarily abandon his employment under the three prong test set forth in State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401.
 {¶ 21} Finding that there is some evidence relied upon by the commission to support its determination that relator failed to show a violation of the written work rule for which claimant was fired, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} In Louisiana-Pacific, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
* * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel. Ashcraft v.Indus. Comm. (1987), 34 Ohio St.3d 42] and Watts [State exrel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
Id. at 403.
 {¶ 23} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court further explained its decision inLouisiana-Pacific, stating:
Now at issue is Louisiana-Pacific's reference to a written
rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
(Emphasis sic.) Id. at 561.
 {¶ 24} The written work rule relating to claimant's termination is found at page 23 of Abbott Foods' employee handbook. Page 23 of the employee handbook is contained in the record, and states in part: "You are not to leave your job during normal working hours without obtaining permission from your supervisor."
 {¶ 25} Unfortunately, we do not have a transcript of the testimony presented by the witnesses at the August 13, 2003 hearing before the SHO. The only record of the witnesses' testimony is found in the statements of the hearing officer in his order.
 {¶ 26} It is apparent from the SHO's order that claimant's alleged noncompliance with the written work rule posed two factual issues for the hearing officer: (1) did Abbott Foods make it clear to claimant prior to the alleged violation that he could only obtain permission to leave his job from Sheilah Flad; and (2) if Abbott Foods did not make it clear, did claimant obtain permission from another supervisor, namely, Mr. Baldridge?
 {¶ 27} The commission answered both factual issues in claimant's favor based upon the hearing testimony described in the SHO's order. Clearly, the SHO's description of the hearing testimony supports the SHO's factual findings. Thus, there is some evidence to support the commission's determination.
 {¶ 28} As the SHO stated in his order, claimant testified that he told Mr. Baldridge that he was leaving work. Mr. Baldridge did not deny claimant's testimony, but denied that he was claimant's supervisor. Mr. Baldridge did testify, however, that he had showed claimant what to do when he was on light duty. The SHO could properly conclude from this testimony that claimant reasonably could have thought that Mr. Baldridge was his supervisor.
 {¶ 29} Although not cited by the SHO in his order, there is indeed other evidence in the record suggesting that Abbott Foods may not have been clear about who was to give claimant permission to leave work. Abbott Foods' March 20, 2003 termination letter suggests this when it states:
* * * As you know, you are required to inform me, as your light duty supervisor, if it is necessary for you to leave the workplace early. You did not contact me nor did you contact, Jay Crabtree, Jim Fodey or James Baldridge, warehouse supervisors and employees that you had worked with.
 {¶ 30} It is the commission that weighs the evidence. The commission, through its SHO, weighed the testimony of claimant, Ms. Flad and Mr. Baldridge. This court cannot reweigh the witnesses' testimony in this action.
 {¶ 31} Moreover, the SHO was not required to credit Mr. Baldridge's June 16, 2003 written statement over his hearing testimony. Apparently, despite his June 16, 2003 written statement, Mr. Baldridge did not deny at the hearing that claimant told him that he was leaving work on March 14, 2003. It was the SHO's call as to how Mr. Baldridge's hearing testimony was to be viewed over his June 16, 2003 written statement.
 {¶ 32} In this action, Abbott Foods argues that it was an abuse of discretion for the SHO to fail to acknowledge in his order that claimant "was terminated as a progression of three different incidents of insubordination." (Relator's brief at 4.) According to relator, the first incident produced only a verbal warning about being noncompliant with Abbott Foods' workers' compensation procedures. The second incident involved the issuance of the written reprimand regarding the incident of February 19, 2003. The third incident occurred on March 14, 2003, and resulted in claimant being terminated.
 {¶ 33} In the magistrate's view, the SHO's failure to acknowledge the verbal warning that claimant apparently received prior to the written reprimand does not detract from the SHO's decision. There is no indication in the record that the verbal warning related to the question of whether Abbott Foods had made it clear to claimant that he was to report only to Sheilah Flad in obtaining the necessary permission to leave work. The verbal warning is only vaguely mentioned in the written reprimand There was clearly no abuse of discretion in failing to address the verbal reprimand in the SHO's order of August 13, 2003.
 {¶ 34} The magistrate recognizes that Abbott Foods' March 20, 2003 termination letter notified claimant that "due to multiple violations of company policy and procedure, you are hereby terminated." This indicates that claimant may not have been fired for the March 14, 2003 incident had there not been prior violations of company policy as indicated by the verbal and written reprimands. Here, given that Abbott Foods failed its burden of proof with respect to the alleged offense that immediately caused the termination, the validity of the alleged prior violations is not at issue here.
 {¶ 35} Relator also suggests that the SHO's finding that "the injured worker's testimony was not very credible" detracts from the SHO's decision. The magistrate disagrees. It was within the SHO's fact-finding discretion to believe some, none, or all of the claimant's hearing testimony. Apparently, the SHO believed claimant's testimony that he told Mr. Baldridge he was leaving work because Mr. Baldridge did not deny that this occurred.
 {¶ 36} Finally, it should be noted that Abbott Foods had the burden of proof on the voluntary abandonment issue. State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78. Accordingly, it was proper for the commission to resolve any doubts about the alleged violation of the work rule in claimant's favor. It should also be noted that the SHO's determination was de novo. Contrary to relator's suggestion, the SHO was not bound by the factual findings of the DHO.
 {¶ 37} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 s/s: Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE