STATE ex rel. POUNDS

v.

WHETSTONE GARDENS & CARE CENTER et al.

[Cite as *State ex rel. Pounds v. Whetstone Gardens & Care Ctr.*, 180 Ohio App.3d 478, 2009-Ohio-66.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–212.

Decided Jan. 8, 2009.

Kennedy & Colasurd Co., L.P.A., and Michael D. Colasurd, for relator.

Newhouse, Prophater & Letcher, L.L.C., and Barbara K. Letcher, for respondent the Whetstone Gardens & Care Center.

Richard Cordray, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Industrial Commission of Ohio.

GREY, Judge.

{¶ 1} Relator, Linda Pounds, filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for temporary total disability ("TTD") compensation and to enter an order awarding her such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate, who has rendered a decision and recommendation (attached as Appendix A) that includes findings of fact and conclusions of law and recommends that this court issue the requested writ. The respondent employer, the Whetstone Gardens & Care Center ("Whetstone Gardens") has filed objections to the magistrate's decision, and the matter is now

before this court for an independent review. For the reasons that follow, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law and issue the requested writ.

{¶ 3} Relator injured her back on June 30, 2006, during the course of her duties as a resident assistant for Whetstone Gardens. Her claim was initially accepted and then denied by the Bureau of Workers' Compensation, and she administratively appealed. On December 8, 2006, a district hearing officer ("DHO") heard the matter and issued an order allowing the claim for "lumbosacral sprain" and awarding TTD compensation to commence on July 1, 2006, based upon emergency-room records and reports from an attending physician. The DHO also refused to accept the employer's contention that relator had voluntarily abandoned her employment. The employer based this contention on the assertion that relator had been terminated after repeated violations of employee work rules, culminating in an incident in which relator allegedly verbally abused a resident on the day relator was injured.

{¶ 4} Whetstone Gardens administratively appealed the DHO's order, and a staff hearing officer ("SHO") eventually issued an order vacating the DHO's order. The SHO again allowed the claim but denied TTD compensation, accepting the employer's contention that relator had voluntarily abandoned her employment due to her dismissal for violation of the employer's standards of employee conduct.

{¶ 5} After assessing the evidence heard by the SHO, the magistrate in the present action has recommended that we issue the requested writ because, while the work rule relied upon by the employer did clearly define prohibited conduct, the SHO did not determine whether relator had actually violated the work rule by using an inappropriate tone of voice toward a resident. The magistrate notes that it is the employer's burden to present evidence upon which the commission can rely in determining that an employee has engaged in conduct warranting a discharge for cause. *State ex rel. Watkins v. Indus. Comm.,* Franklin App. No. 02AP–337, 2003-Ohio-3109, 2003 WL 21384850. The magistrate concludes that the SHO's order does not expressly make such a determination, nor is there "some evidence" in the record to support such a finding.

{¶ 6} Whetstone Garden's objections in the present case essentially argue that in the absence of a hearing transcript, the magistrate had no basis to find that the suitable testimony was *not* offered at the hearing before the SHO. Respondent further argues that the documentary evidence presented regarding relator's purported employee conduct violations was sufficient to support the commission of the offense for which she was terminated and, thus, voluntary abandonment of her employment.

{¶ 7} Respondent's objections, while cogent and clearly articulated, merely re-argue matters that were fully considered and addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, these objections are not well taken. The absence of "some evidence" before the SHO, as described in the magistrate's recitation of the evidence, as well as examination of the SHO's order, is supported. We agree with the magistrate's reasoning and conclusion that the SHO's order and the evidence before the SHO were insufficient to establish voluntary abandonment.

{¶ 8} After independent review, we find that respondent's objections to the magistrate's decision in this matter are not well taken. We adopt the magistrate's decision as our own, including his findings of fact and conclusions of law, and grant the requested writ of mandamus, ordering the commission to vacate the SHO's order of January 23, 2007, and to enter a new order consistent with the present decision adjudicating the merits of relator's application for TTD compensation.

Objections overruled;  
writ of mandamus granted.

BRYANT and BROWN, JJ., concur.

GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

## APPENDIX A

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. Pounds

v.

Whetstone Gardens & Care Center et al.

No. 08AP–212

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered on August 29, 2008

Kennedy & Colasurd Co., L.P.A., and Michael D. Colasurd, for relator.

Newhouse, Prophater & Letcher, L.L.C., and Barbara K. Letcher, for respondent the Whetstone Gardens & Care Center.

Nancy H. Rogers, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Industrial Commission of Ohio.

### IN MANDAMUS

MACKE, Magistrate.

{¶ 9} In this original action, relator, Linda Pounds, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation on the grounds that she voluntarily abandoned her employment, and to enter an order awarding her TTD compensation.

Findings of Fact:

{¶ 10} 1. On June 30, 2006, relator sustained an industrial injury while employed as a resident assistant for respondent the Whetstone Gardens & Care Center ("Whetstone Gardens" or "employer"), a state-fund employer.

{¶ 11} 2. On July 1, 2006, relator presented to a hospital emergency room. According to the report of the emergency-room physician, relator stated that the previous day she felt something pull in her back as she was rolling a patient to change the patient's clothes. She did not have any pain initially, but upon awakening on the morning of July 1, 2006, her pain prompted her to go to the emergency room. The emergency-room physician diagnosed "[a]cute low back strain" and prescribed medication for pain. He placed her on "light duty for the next 3 days."

{¶ 12} 3. On July 7, 2006, relator filed an application for workers' compensation benefits. Apparently, the employer refused to certify the claim.

{¶ 13} 4. Initially, on August 2, 2006, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the claim. However, on August 11, 2006, the bureau vacated its prior order and disallowed the claim. Relator administratively appealed.

{¶ 14} 5. Earlier, on February 15, 2006, some four and one-half months prior to the industrial injury, relator received a written warning, dated February 13, 2006, from her employer. The warning alleged that a patient "pressure sensitive alarm" was left unplugged. It also alleged that a patient had not been "changed" during the last round. The written warning advised:

We at Whetstone believe strongly that this kind of action towards our residents can not be tolerated and you are being given a FINAL warning. Any repeat of this or any type of resident neglect or mistreatment in any way will result in immediate termination. This warning is to be in place until the Director of Nurses or Administrator chooses to remove it, and that decision will only be based on significant improvement in your care and overall performance over the period of at least 2 years.

(Capitalization sic.)

{¶ 15} Relator signed the written warning to indicate that she understood its contents.

{¶ 16} 6. On May 1, 2006, relator received another written warning that is dated April 25, 2006. The warning states: "Your attendance record has been evaluated and at this time you have (7) Absences. Based on the Whetstone policy, this warrants corrective action and is a warning. Progressive disciplinary action will occur on an ongoing basis as needed."

{¶ 17} 7. According to two employer documents described below, on June 30, 2006, the date of the industrial injury, relator's supervisor (unit manager of station two) overheard relator using "an inappropriate tone of voice" towards a resident.

{¶ 18} 8. The record contains the following employer-prepared document that on its face fails to indicate its author and the date of authorship. Apparently, the document was prepared after the employer was notified of the industrial injury:

Linda worked on June 30, 2006 from 6:53 a.m. to 7:47 a.m.

On this day the Unit Manager of station two overheard Linda in a resident's room using an inappropriate tone of voice towards a resident. The time was around 7:20 a.m. When the unit manager went into the room Linda was just starting personal care, none had been completed she also observed Linda quickly pull her arm back as if she didn't want her to see what she was doing. At this time this incident was reported to the Director of Nursing. Linda was put on suspension pending outcome of investigation.

Linda did not complete a first report of injury nor was she drug tested which is Whetstone's policy for an injury requiring medical treatment. Nor did she mention at this time that there was any type of problem or injury sustained from this resident.

{¶ 19} 9. At oral argument before the magistrate, employer's counsel informed the magistrate that the above-described document was prepared by a Ms. Wachalec who was the employer's human-resources director. The name of the unit manager has not been disclosed to this magistrate. Also, employer's counsel agreed that the unit manager did not appear at the administrative proceedings described below because he or she had left his or her employment at Whetstone Gardens at the time of the administrative proceedings.

{¶ 20} 10. The record also contains an employer document dated July 3, 2006, on a so-called "Warning Form." Apparently, the July 3, 2006 document was prepared by relator's supervisor, Ms. Hennessey. On the form, Hennessey wrote:

On February 15, 2006 you received a final warning for resident care issues. The warning indicated that any future resident neglect or mistreatment would result in termination. On Friday June 30th you're [sic] supervisor heard/witness[ed] inappropriate tone of voice in a remark directed towards patient J.G.

{¶ 21} Under "Corrective Actions Required," Hennessey wrote: "Termination do [sic] to inappropriate tone of voice toward resident."

{¶ 22} The above-described document indicates that Hennessey signed it on July 3, 2006, and that relator refused to sign.

{¶ 23} 11. The record also contains a portion of its employee handbook. The handbook states in part:

Any employee involved in any of the following is subject to disciplinary action. This list is not intended to be all-inclusive; these are merely examples of unacceptable behavior.
* * *
18. Physical, mental, or verbal abuse/harassment of residents, visitors, families, or fellow employees; resident neglect/abuse, violation of patients' rights, or failure to report same.

{¶ 24} 12. On December 8, 2006, relator's administrative appeal from the bureau's August 11, 2006 order was heard by a district hearing officer ("DHO"). Following the hearing, the DHO issued an order allowing the claim for "lumbosacral sprain."

{¶ 25} The DHO also awarded TTD compensation beginning July 1, 2006, based upon the July 1, 2006 emergency-room records and reports from attending physician Mary Ann Wynd, M.D., certifying that relator is temporarily and totally disabled.

{¶ 26} The DHO further addressed the employer's affirmative defense alleging that relator had voluntarily abandoned her employment at Whetstone Gardens. The DHO's order states:

The District Hearing Officer finds that the employer has not met its burden of proving that the affirmative defense of voluntary abandonment applies in this case and that the standards of the Ohio Supreme Court's case [*State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469] have been met so as to foreclose the payment of temporary total disability compensation. There is on file a 07/03/2006 warning form from the employer stating that the [I]njured Worker would be terminated, a copy of the employer's applicable work rules (filed 08/25/2006), and a 10/05/2005 signature of the Injured [W]orker signing for the employee handbook. However, the undated and unsigned statement filed 08/09/2006 from an unknown person with the employer states that the Injured Worker was just suspended. In addition, in response to a questionnaire from the managed care organization, on 07/11/2006 (which is after the alleged 07/03/2006 termination) the employer's human resources director states that the Injured Worker has not been terminated and that light duty is available to the Injured Worker. Therefore, the District Hearing Officer finds that the employer has not even proved that the Injured Worker has been terminated.

{¶ 27} 13. The employer administratively appealed the DHO's order of December 8, 2006.

{¶ 28} 14. Following a January 23, 2007 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order of December 8, 2006. The SHO's order indicates that besides counsel, Hennessey and Wachalec appeared for the employer. The SHO's order indicates that relator appeared with counsel.

{¶ 29} The SHO's order allows the claim but denies TTD compensation, explaining:

> The claimant's request for temporary total disability compensation 06/30/2006 forward is specifically denied. The Staff Hearing Officer finds that the claimant is not entitled to receive temporary total disability compensation because she voluntarily abandoned her former position of employment as a convalescent worker.
>
> The Staff Hearing Officer finds that the claimant was terminated from her employment on 07/03/2006 for the violation of a written work rule of the employer. The employer's work rule clearly defined the prohibited conduct. This finding is supported by the employer's written "Standards of Employee Conduct." The violation of the written work rule had been previously identified by the employer as a dischargeable offense. This finding is supported by the "Standards of Employee Conduct" that indicates a violation of the standards of conduct can result in immediate dismissal from employer, regardless of the fact that it may be a "first offense." In addition, the prohibited conduct was known to the claimant. This finding is supported by the claimant's 10/05/2005 signature that acknowledges that the claimant received the Staff Member Handbook that sets forth the "Standards of Employee Conduct."
>
> The Staff Hearing Officer further notes that the claimant received a "final warning" in writing on 02/13/2006 regarding resident neglect or mistreatment. That written warning indicated that any further incident of resident neglect or mistreatment *will* result in immediate termination. Therefore, based upon this 02/13/2006 warning the Staff Hearing Officer is not persuaded that the claimant's termination was related to her work injury since the claimant was warned of a possible termination 5 months before her 06/30/2006 industrial injury. The claimant received another warning on 07/03/2006. That warning involved another incident of resident mistreatment which occurred on the date of the claimant's industrial injury. Thereafter, the claimant was terminated effective 07/03/2006. Therefore, the Staff Hearing Officer finds that the employer has met their burden as set forth in *State ex rel. Louisiana–Pacific Corp. v. Indus.*

*Comm.* 72 [Ohio St.]3d 401 [650 N.E.2d 469] to establish a voluntary abandonment.

(Emphasis sic.)

{¶ 30} 15. On February 9, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 23, 2007. The employer's appeal was also refused.

{¶ 31} 16. On March 14, 2008, relator, Linda Pounds, filed this mandamus action.

Conclusions of Law:

{¶ 32} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

■ {¶ 33} A voluntary departure from employment precludes receipt of TTD compensation. An involuntary departure does not. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678.

{¶ 34} In *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:

> [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with [*State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533] and [*State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202]—*i.e.,* that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 35} In *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 561, 752 N.E.2d 254, the court held that the rule or policy supporting an employer's voluntary abandonment claim must be written. The court explained:

> Now at issue is *Louisiana–Pacific*'s reference to a *written* rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing *Louisiana–Pacific*'s language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
>
> The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set

forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.

(Emphasis sic.)

{¶ 36} To begin, relator argues that the work rule allegedly violated fails to clearly define prohibited conduct as required by *Louisiana–Pacific*. As previously noted, relator allegedly violated rule 18 of the employee handbook when, on June 30, 2006, she allegedly used "an inappropriate tone of voice" towards a resident.

{¶ 37} To reiterate, rule 18 provides: "Physical, mental, or verbal abuse/harassment of residents, visitors, families, or fellow employees; resident neglect/abuse, violation of patients' rights, or failure to report same."

{¶ 38} In the magistrate's view, rule 18 does clearly define prohibited conduct. That the determination of verbal abuse may involve a subjective component in the mind of a witness to the alleged abuse or even the recipient of the alleged verbal abuse does not render rule 18 so vague as to require this court to declare that it fails to define prohibited conduct.

{¶ 39} In the magistrate's view, the real issue here is whether the relied-upon evidence constitutes some evidence supporting a commission's determination that relator violated the work rule on June 30, 2006, by using an inappropriate tone of voice towards a resident.

{¶ 40} It was the duty of the SHO to determine whether relator actually used an inappropriate tone of voice towards a resident on June 30, 2006, that would justify her termination from employment. *State ex rel. Hin[o]josa v. Wulff Ents., Inc.*, Franklin App. No. 07AP–166, 2008-Ohio-240, 2008 WL 192544; *State ex rel. Watkins v. Indus. Comm.*, Franklin App. No. 02AP–337, 2003-Ohio-3109, 2003 WL 21384850. Stated otherwise, it is insufficient for the SHO to simply determine that the employer terminated relator for violation of a work rule that clearly defines prohibited conduct. Id. It was the employer's burden to present evidence to the SHO upon which he could rely in determining that relator actually committed the offense.

{¶ 41} A careful reading of the SHO's order of January 23, 2007, leaves substantial doubt that the SHO actually determined that relator used an inappropriate tone of voice towards a resident on June 30, 2006. If the SHO was, in fact, persuaded that relator used an inappropriate tone of voice towards a resident on June 30, 2006, the SHO did not directly say so in his order. At best, such a finding is only implied or inferred from the order.

{¶ 42} Even if the SHO's order of January 23, 2007, can be read to contain a finding that relator actually used an inappropriate tone of voice towards a resident on June 30, 2006, there is not "some evidence" in the record to support such a finding.

{¶ 43} The document described at paragraph eight of the magistrate's findings of fact is referred to in the DHO's order as the "undated and unsigned statement filed 08/09/2006 from an unknown person with the employer." This document shall be referred to herein as "the employer's undated statement." Due to the representations of employer's counsel at oral argument, we now know that the employer's undated statement was prepared by the employer's human-resources director, Ms. Wachalec, who appeared at the SHO's hearing. We still do not know the date that the document was prepared by Wachalec, but the DHO has told us that the employer's undated statement was filed on August 9, 2006.

{¶ 44} The employer's undated statement states that on June 30, 2006, "the Unit Manager of station two overheard Linda in a resident's room using an inappropriate tone of voice towards a resident." The words spoken in an inappropriate tone of voice are not disclosed. We are only told that there was an inappropriate tone of voice.

{¶ 45} The name of the unit manager who presumably told Wachalec what he had heard and concluded about relator's tone of voice is not revealed in the employer's undated statement, nor has it been revealed to this magistrate.

{¶ 46} We have been told by employer's counsel that the unit manager did not appear at the administrative proceedings and thus did not testify regarding the tone of voice that he heard on June 30, 2006.

{¶ 47} The document described at paragraph ten of the magistrate's findings of fact was prepared by relator's supervisor, Ms. Hennessey, on July 3, 2006. Hennessey signed this document, which hereafter shall be referred to as "the employer's July 3, 2006 termination document." As previously noted, this document states: "On Friday June 30th you're [sic] supervisor heard/witness[ed] inappropriate tone of voice in a remark directed towards patient J.G." We know that Hennessey appeared at the SHO's hearing. We also know that Hennessey herself did not hear or witness the tone of voice on June 30, 2006.

{¶ 48} There is no dispute that it was only the unit manager who allegedly heard relator's tone of voice on June 30, 2006.

{¶ 49} Yet the unit manager, whose identity remains unknown, did not prepare his own written statement describing what he heard on June 30, 2006, nor did he appear on behalf of the employer to testify at the administrative proceedings.

{¶ 50} Given the above scenario, the only evidence that the SHO had before him to make a determination of whether relator actually used an inappropriate tone of voice on June 30, 2006, were the two employer documents indicating that the unit manager had reported what he or she concluded to be an inappropriate tone of voice.

{¶ 51} In the magistrate's view, the two employer documents fall short of constituting the "some evidence" needed to support a determination that relator actually used an inappropriate tone of voice towards a resident on June 30, 2006. The two documents require the SHO to guess whether relator actually used an inappropriate tone of voice.

{¶ 52} This magistrate recognizes that R.C. 4123.10 provides that the commission "shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure."

{¶ 53} Notwithstanding R.C. 4123.10, this case severely tests the limits of the time-honored some-evidence rule.

{¶ 54} In *State ex rel. Johnson v. Indus. Comm.* (1983), 11 Ohio App.3d 22, 23, 11 OBR 35, 462 N.E.2d 1237, this court had occasion to describe the some-evidence rule:

A mere scintilla of evidence would be insufficient to support the finding of the Industrial Commission. Rather, the "some-evidence" rule is somewhat akin to the rule applied in civil cases to determine whether a verdict should be directed. See Civ.R. 50(A)(4). Thus, the mandamus determination must be predicated upon a finding whether or not there is evidence to support the findings of the Industrial Commission, not whether this court agrees with those findings. In making the appropriate determination, the court is required to construe the evidence most strongly in favor of supporting the findings of the Industrial Commission. This appears to be the "some-evidence" rule, namely, whether, when construed most strongly in favor of supporting the findings of the Industrial Commission, the evidence reasonably supports the findings made by the Industrial Commission. * * *

{¶ 55} Here, when construing the two employer documents most strongly in favor of supporting the commission's findings, they fail to constitute some evidence under the rule.

{¶ 56} Again, at best, we have two employer documents indicating that the unit manager reported his conclusion or opinion that relator's tone of voice was inappropriate on June 30, 2006. The unit manager never prepared a written statement explaining why he concluded that the tone of voice was inappropriate, nor did he testify at the administrative proceedings.

{¶ 57} It is certainly conceivable that a tone of voice could be construed as verbal abuse under certain circumstances. Nevertheless, the employer here failed to produce evidence upon which the commission could rely to support a finding of verbal abuse.

{¶ 58} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of January 23, 2007 and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the merits of relator's request for TTD compensation.