## [STATE EX REL.] WAL–MART STORES, INC.,

### v.

### RILEY et al.

[Cite as *State ex rel. Wal–Mart v. Riley,* 159 Ohio App.3d 598, 2005-Ohio-521.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–347

Decided Feb. 10, 2005.

Dinsmore & Shohl, L.L.P., Christopher A. Benintendi, and Theresa M. Muhic, for relator.

Philip J. Fulton Law Office and William A. Thorman III, for respondent Linda L. Riley.

Jim Petro, Attorney General, and Charissa D. Payer, Assistant Attorney General, for respondent Industrial Commission of Ohio.

DESHLER, Judge.

{¶ 1} Relator, Wal–Mart Stores, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order in which it found that respondent Linda L. Riley, the claimant, did not voluntarily abandon her employment and which awarded her temporary total disability ("TTD") compensation.

{¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny the requested writ of mandamus. (See appendix.) Relator has filed objections to the magistrate's decision, which reargue issues previously considered and rejected by the magistrate.

{¶ 3} Upon review of the magistrate's decision and an independent review of the record, this court finds that the magistrate correctly determined that relator's employee handbook, written corporate policies, and written warning to claimant did not constitute clearly defined prohibitive conduct so as to bar the payment of TTD compensation pursuant to *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469. Further, the magistrate properly found that the commission did not abuse its discretion by awarding TTD compensation based solely upon the September 9, 2003 C–84.

{¶ 4} Following independent review of the record, this court finds that the magistrate has properly determined the pertinent facts and applied the salient law to those facts. Accordingly, this court adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein, and overrules relator's objections. In accordance with the magistrate's recommendation, the requested writ of mandamus is denied.

Objections overruled;
writ of mandamus denied.

PEGGY BRYANT and SADLER, JJ., concur.

DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

### APPENDIX

MAGISTRATE'S DECISION

August 30, 2004

STEPHANIE BISCA BROOKS, Magistrate.

{¶ 5} Relator, Wal–Mart Stores, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commis-

sion of Ohio to vacate its order wherein it found that respondent Linda L. Riley, the claimant, did not voluntarily abandon her employment and awarded her temporary total disability ("TTD") compensation.

## Findings of Fact

{¶ 6} 1. Claimant sustained a work-related injury on March 1, 2003, and her claim has been allowed for "cervical strain and contusion; bilateral trapezius strain; thoracic strain and contusion."

{¶ 7} 2. Claimant was unable to return to her former position of employment; however, relator was able to accommodate her work restrictions.

{¶ 8} 3. On May 14, 2003, claimant was terminated for misconduct.

{¶ 9} 4. At the time claimant was hired, she was provided with a copy of relator's handbook, which contained all current policies and programs that relator had in place as of the date she was hired. Claimant acknowledged receipt of the handbook. Claimant also received a copy of relator's corporate policy entitled "Coaching for Improvement." This disciplinary process has four coaching-for-improvement levels: (1) verbal coaching, (2) written coaching, (3) decision-making day, and (4) termination.

{¶ 10} 5. Sometime during fall 2002, claimant received a verbal warning that relator documented as follows:

THE FOLLOWING WAS OBSERVED OF THIS ASSOCIATE'S BEHAVIOR AND/OR PERFORMANCE:

Respect For the Individual issues[.] Needs to work together as a team with fellow associates and discuss issues with management not co-associates in break room!

WHAT IS THE IMPACT OF THIS BEHAVIOR/-PERFORMANCE ON CUSTOMER SERVICE, OTHER ASSOCIATES AND THE PROFITABILITY OF THE OPERATING UNIT?

Causing a hostile work environment which affects the morale of all associates. [C]arrying tension to sales floor which will affect customer service and profitability of the store.

THE BEHAVIOR OR PERFORMANCE EXPECTED NEXT TIME:

Work together as a team [and] address issues with supervisors only not co-associate.

(Emphasis sic.)

{¶ 11} 6. Later, on November 24, 2002, claimant received a level-two written coaching for improvement for the following documented reason:

THE FOLLOWING WAS OBSERVED OF THIS ASSOCIATE'S BEHAVIOR AND/OR PERFORMANCE:

Lack of respect for the individual creating a hostile work environment[.]

WHAT IS THE IMPACT OF THIS BEHAVIOR/-PERFORMANCE ON CUSTOMER SERVICE, OTHER ASSOCIATES AND THE PROFITABILITY OF THE OPERATING UNIT?

Intimidating other associates creates a bad work environment for other associates and not wanting to do their job or come to work leaving less coverage and could overall affect the profitability of the store[;] lowers morale[.]

THE BEHAVIOR OR PERFORMANCE EXPECTED NEXT TIME:

Come to work[,] do your job and worry about yourself[.]  Discuss issues with management not break room[.]  Take care of customers in a polite way[.]
(Emphasis sic.)

{¶ 12} 7. Claimant was terminated on May 14, 2003, for "spreading rumors" on May 7, 2003.

{¶ 13} 8. Relator's policy defines "misconduct" as follows:

Misconduct includes behavior other than job performance, which falls below stated expectations, violates Company policy, does or may interfere with safe, orderly, or efficient operations or which creates a hostile or offensive environment for Associates, Customers/Members, and/or Suppliers, including compliance with Health Privacy Standards.

Examples of misconduct include, but are not limited to:
* * *

• Harassment/Inappropriate Conduct.

{¶ 14} 9. On July 17, 2003, claimant filed a motion seeking TTD compensation from May 14, 2003, and to continue.

{¶ 15} 10.  Claimant's motion came before a district hearing officer ("DHO") on August 28, 2003, and resulted in an order granting the compensation.  At the hearing, relator argued that claimant was not entitled to the compensation, as she had voluntarily abandoned her former position of employment when she was terminated for misconduct.  The DHO first looked at whether claimant had ever been placed on notice of a written policy that informed her that she could be terminated for "talking about people in the break room" or "spreading rumors." The DHO determined that relator's handbook definitions were too vague to place anyone on notice as follows:

Claimant signed an acknowledgment of self insured's employee handbook on 10/02/2002.  Self insured points to provisions of that handbook indicating that

employees may be fired for "misconduct" and defining this term as including "behavior ... which creates a hostile or offensive environment for associates, customers/members, and/or suppliers." The Supreme Court has cautioned that claims of a [*State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469] bar must be looked at very closely due to the potential for abuse. The behavior that can result in termination must be *specifically* set out in writing before a bar to temporary total can be erected. Terms such as "misconduct" and "behavior which creates a hostile or offensive environment" are *far* too vague to place anyone on notice that they could be terminated for "talking about people in the breakroom [sic]" and/or "spreading rumors." Indeed, the terms used in the employee handbook are so vague that literally *any* behavior could arguably provide grounds for termination. While such terminations might be defensible in a lawsuit over wrongful discharge under the employee-at-will doctrine, it will *not* bar receipt of temporary total.

(Emphasis sic.)

{¶ 16} Relator then argued that any potential defects in the handbook definitions were cured by its disciplinary process, during which claimant was twice warned about her behavior. The DHO addressed that issue as follows:

Claimant acknowledged at hearing that she received a *verbal* warning regarding "talking about management" in the breakroom [sic] on an unspecified date in either October or November 2002. There is an undated memo which was *not* signed by claimant nor given to her which documents this *verbal* warning.

The Supreme Court has been very clear that no *Louisianna-Pacific* [sic] bar exists unless the prohibited conduct is specified *in writing*, regardless of whether or not claimant had actual knowledge of the rule. If the policy must be in writing it stands to reason that any clarifications of that policy must be in writing as well. Therefore, nothing that occurred during the *verbal* warning can be used to bar receipt of temporary total.

On 11/24/2002 claimant received a *written* warning of misconduct. Claimant signed this form, acknowledging receipt of it on 11/24/2002. This form indicates that claimant was disciplined for "creating a hostile work environment"; i.e., the same terms used on the employee handbook. Thus, at this time claimant was given written notice that employer considered her behavior to fall under the definition of "misconduct" contained in the handbook. Unfortunately, this document never identifies precisely what claimant allegedly did. However, this paper does tell claimant in writing that she must "discuss issues with management not (in) breakroom," and that if she fails to do this the next level of discipline will be "termination." Thus, even though the employee handbook is too vague to assist self insured's position in any way whatsoever,

the 11/24/2002 document is *by itself* a *written* notice of which claimant acknowledged receipt that told her she would be fired if she "discussed issues" in the breakroom [sic] instead of with management.

(Emphasis sic.)

{¶ 17} The DHO then considered whether or not "discussing issues," which term was included in her written warning, was the same thing as "talking about people" or "spreading rumors" and noted as follows:

This leaves open the question of whether "discussing issues" (an inherently vague term itself) is the same thing as "talking about people" and/or "spreading rumors," i.e., the actual behaviors for which claimant was terminated on 05/14/2003. District Hearing Officer is highly dubious as to whether that question could be answered in the affirmative. However, even giving self insured the broadest possible benefit of the doubt and assuming for the sake of argument that the 05/14/2003 [sic] written warning is sufficient to meet the threshold requirements, self insured would *still* fail under *Louisianna-Pacific* [sic].

(Emphasis sic.)

{¶ 18} The DHO concluded that relator had presented very little evidence, as follows:

As to this seminal issue, self insured has presented very little evidence.

Claimant was terminated for "talking about people in the breakroom [sic] and spreading rumors." District Hearing Officer has no idea what claimant allegedly said, whom she was supposedly talking about, or whom she was supposedly talking to.

Claimant denies the allegation in its entirety. Claimant testified that after she was given a written warning on 11/24/2002 she stopped talking to anyone whatsoever in the breakroom [sic] for fear of losing her job. As to 05/07/2003, claimant testified she was sitting by herself in a corner while three male co-workers (to whom she was not talking) complained about something. Per claimant, a member of management overheard the men and wrote claimant up, while the men were not disciplined at all.

The only evidence that even comes close to opposing claimant's testimony is the aforementioned exit interview. As previously stated, this gives no details whatsoever.

Thus, even if one assumes that the 11/24/2002 [warning] constitutes a sufficient written policy, self insured failed to meet its burden of proving claimant actually violated that policy. Since self insured failed to prove claimant was fired for violation of a written work rule, no *Louisianna-Pacific* [sic] bar applies, and temporary total is payable.

{¶ 19} 11. The employer appealed and submitted additional evidence. Specifically, relator submitted a copy of its corporate policy on harassment and inappropriate conduct. That document defined "Harassment/Inappropriate conduct" as follows:

Harassment/inappropriate conduct is defined broadly and includes but is not limited to: welcome or unwelcome conduct which causes fear or intimidation, creates an offensive or hostile work environment, or interferes with an Associate's work performance.

The policy provides further as follows:

- Examples of conduct which may, depending on the totality of the circumstances, constitute sexual harassment, include:

* * *

- Gossiping or spreading rumors or lies about other Associates can also create a hostile environment by interfering with an individual's job performance.

{¶ 20} 12. The matter was heard before a staff hearing officer ("SHO") on October 1, 2003. The SHO affirmed the prior DHO order as follows:

In this case, the Staff Hearing Officer affirms the DHO finding that the written work rule or policy which the employer alleges that the injured worker violated is too vague to be enforced. The employer alleges "misconduct" by the injured worker, and previously disciplined her for "behavior creating a hostile work environment." The alleged misconduct was that she "discussed issues" in the breakroom [sic] instead of with management.

As stated in the DHO order: "Terms such as 'misconduct' and 'behavior' which creates a hostile or offensive environment are *far* to [sic] vague to place anyone on notice that they could be terminated for 'talking about people in the breakroom [sic]' and/or 'spreading rumors.' Indeed, the terms used in the employee handbook are so vague that literally *any* behavior could arguably provide grounds for termination . . ."

The Staff Hearing Officer therefore finds that the employee has failed to met the first criteria required pursuant to *Louisiana–Pacific* by failing to "clearly define prohibited conduct."

{¶ 21} 13. Further appeal by relator was refused by order of the commission mailed December 3, 2003.

{¶ 22} 14. Thereafter, relator filed the instant mandamus action in this court.

## Conclusions of Law

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal

right to the relief sought and that the commission has a clear legal duty to provide the relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 24} In this mandamus action, relator contends that the commission abused its discretion by finding that relator's handbook, the additional policy it submitted, and the written warning did not constitute clearly defined prohibitive conduct so as to bar the payment of TTD compensation pursuant to *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469. Relator also contends that the commission abused its discretion in granting claimant TTD compensation based solely upon the September 9, 2003 C–84. For the reasons that follow, this magistrate disagrees.

{¶ 25} It has always been understood that termination can constitute voluntary abandonment of employment. In *Louisiana–Pacific,* the court held that the employer's discharge of a worker can constitute a voluntary relinquishment of employment where the worker violated a written rule or policy, provided that the rule/policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known by the worker or should have been known by the worker. Furthermore, the court has specifically held that the rule itself must be clear and in writing. *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 667 N.E.2d 1217.

{¶ 26} In the present case, the commission reviewed relator's handbook, its coaching-for-improvement policy, and, presumably, the policy submitted concerning harassment and inappropriate conduct. Based upon the commission's review of those documents, the commission specifically found that the terms "misconduct" and "behavior which creates a hostile or offensive environment" were far too vague to place workers on notice that they could be terminated for "talking about people in the break room" or "spreading rumors," for which claimant herein was terminated. The commission determined that the terms used in the handbook were so vague that literally any behavior could arguably provide grounds for termination but would not bar the receipt of TTD compensation.

{¶ 27} Relator then argued that it had provided claimant with sufficient written notice that her behavior was unacceptable and could result in termination. The commission then looked at the November 24, 2002 written warning-of-misconduct form indicating that claimant was disciplined for "creating a hostile work environment" and was informed to "[d]iscuss issues with management not break room." The commission specifically noted that the written document never identified exactly what claimant had done. Instead, it simply admonished claimant to address issues with management and not in the break room. The commission then concluded that it was highly dubious that "discussing issues" constituted the same thing as "talking about people" or "spreading rumors," which were the actual behaviors for which claimant was terminated. This magistrate agrees.

{¶ 28} At the SHO hearing, relator submitted its policy concerning harassment and inappropriate conduct and argued that the policy was sufficient to meet the first prong of the *Louisiana–Pacific* test, as it constituted "clearly defined prohibitive conduct." This magistrate disagrees. The definitions cited by relator focus exclusively on sexual harassment, and there is absolutely nothing in the record to indicate that claimant's behavior actually fell under this category at all. The example provided by relator to show that it had clearly defined the prohibitive conduct came from a list of examples of conduct that can constitute sexual harassment. Again, the policy cited by relator provides as follows:

- Examples of conduct which may, depending on the totality of the circumstances, constitute sexual harassment, include:

\* \* \*

- Gossiping or spreading rumors or lies about other Associates can also create a hostile environment by interfering with an individual's job performance.

{¶ 29} Granted, a hostile work environment could be created by behavior that did not constitute sexual harassment; however, the additional evidence submitted by relator at the SHO hearing pertained, by its language, only to sexual harassment. There is no evidence in the record describing claimant's behavior in those terms. The bottom line is that the policies themselves are too vague, and the documentation of claimant's alleged behavior is likewise too vague to show that her termination should bar further receipt of TTD compensation.

{¶ 30} Last, relator contends that the commission abused its discretion by awarding her TTD compensation based solely upon the September 9, 2003 C–84. This magistrate disagrees.

{¶ 31} Claimant was injured on March 1, 2003, and at that time, relator placed her on light-duty employment pursuant to her treating physician's work restrictions. As of the date of hearing, claimant had never been released to full duty.

Therefore, as the DHO noted, but for relator's ability to offer claimant light-duty work, claimant would have been on TTD compensation beginning the first day after her injury. Furthermore, the record contains the C–84 of Dr. Paul R. Yinger, who certified claimant as being disabled from May 14, 2003, through an estimated return-to-work date of September 20, 2003. Relator contends that there is no evidence that claimant's condition suddenly became aggravated, thereby causing her to be disabled. However, as the magistrate just noted, claimant could have been receiving TTD compensation based upon the medical evidence from the day after her injury. However, because relator was able to provide her with light-duty work, claimant was able to continue working. However, as of the date of her termination, claimant had not yet been released to return to work. Thus, this is not a situation in which a person was able to return to work and then was again rendered disabled, and relator's arguments fail.

{¶ 32} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in finding that claimant was not terminated pursuant to *Louisiana–Pacific* and in finding that her termination from employment did not bar her receipt of TTD compensation. Therefore, this court should deny relator's request for a writ of mandamus.