**[Cite as *State v. Taylor*, 2021-Ohio-2950.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29109 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-4853 |
| | : | |
| DUANE TAYLOR | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of August, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 West Second Street, Suite 717, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Duane Taylor appeals from his convictions, following his guilty pleas, of one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree; one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree; and one count of retaliation (public servant/attorney/witness), in violation of R.C. 2921.05(A), a felony of the third degree. The trial court imposed an aggregate sentence of 19 years. We affirm the judgment of the trial court.

{¶ 2} Taylor was indicted on January 11, 2019, on two counts of felonious assault (serious harm) and two counts of felonious assault (deadly weapon), all felonies of the second degree, and one count of retaliation. R.N. and K.H. were the victims of the felonious assault offenses, which occurred on December 28, 2018. Taylor pled not guilty on January 15, 2019. Taylor filed several motions to suppress, all of which were overruled.

{¶ 3} On April 1, 2020, following the death of R.N., a reindictment was issued, charging Taylor with murder (proximate result of felonious assault), in violation of R.C. 2903.02(B), an unclassified felony. Taylor pled not guilty to murder on April 6, 2020.

{¶ 4} On February 5, 2021, Taylor was charged with involuntary manslaughter by bill of information; Taylor withdrew his earlier pleas and entered his guilty pleas on the same day. The bill of information stated in part that Taylor "did as a proximate result of committing or attempting to commit a felony, to-wit: Felonious Assault, cause the death of another, to wit: [R.N.] * * *." The court accepted an agreed sentencing range of 17 to 20 years, and the remaining counts in the original indictment and the murder charge were

dismissed.

{¶ 5} On March 26, 2021, the State filed a sentencing memorandum, asking the court to impose the maximum sentence within the agreed upon range. Taylor's attorney filed a sentencing memorandum on April 1, 2021, asking the court to merge the involuntary manslaughter and felonious assault offenses with the retaliation offense, arguing that they were allied offenses of similar import. Taylor argued that his offenses "were similar in import or significance," they "were not committed separately," and he committed retaliation "with the same animus or motivation," such that retaliation "should merge with the other counts." He requested a sentence of 17 years.

{¶ 6} The pre-sentence investigation report ("PSI") stated that one of the victims, K.H., reported to law enforcement that she "had witnessed many domestic situations and assaults by Taylor against" R.N. With respect to the charged offenses, law enforcement officers reported that R.N. told them that Taylor:

> was hiding in her van. * * * [R.N.] knew it was Mr. Taylor due to him being the father of her daughter's child. She stated that Mr. Taylor stabbed her because he had a child sex crime incident in which he was arrested by Moraine Police Department earlier that day, and his daughter, [D.T.] age 2, was taken from him. [R.N.] was the one who reported the incident to Moraine Police.
>
> * * *
>
> * * * Det. Niehaus had been informed that Mr. Taylor was a suspect in a sexual assault on a child in the City of Moraine, and that the Moraine Police Department was investigating. He asked [K.H.] why she thought Mr.

Taylor might have attacked them. She said that Mr. Taylor had threatened [R.N.] in the past, but had recently learned of the allegations of sex abuse against him. [K.H.] said she believed Mr. Taylor thought that [R.N.] had made the allegations and was looking to kill her.

{¶ 7} At sentencing on April 1, 2021, defense counsel asserted that retaliation "should merge with either the involuntary manslaughter or the felonious assault. It was one incident. And specifically looking at *State v. Ruff*, [143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892,] the offenses were similar in import or significance. They were not committed separately. And * * * the retaliation had the same animus or motivation, and so we believe it meets the three-prong test of *Ruff*."

{¶ 8} The court stated that the following factors were significant to it in imposing sentence:

* * * In reviewing the pre-sentence investigation report, I'm struck by several things. This was a dastardly attack from ambush by a 30-year-old man upon two women who had just gotten into their car to drive to McDonald's. The Defendant lay in wait, hidden in the car until both [R.N.] and [K.H.] were in the vehicle with the door shut.

In the case of [K.H.], she was trapped by being caught in the safety belt, which she had buckled. In essence, [K.H.] was unable to escape the stab wounds inflicted by Mr. Taylor until several of those wounds had already been inflicted.

The fact that Mr. Taylor lay in wait in the car with a deadly weapon for the women to enter the vehicle is strong evidence of his planning to

attack and to injure those women.

* * *

Immediately following the attack, [K.H.] went over to assist her friend, [R.N.], who was sitting out of the car leaning against an apartment building for support.  In the words of [K.H.], [R.N.] was, and I'm quoting, "Gasping and gurgling."

[R.N.] was taken to the hospital and placed in the intensive care unit where she was put on a ventilator.  [R.N.] * * * was stabbed seven times, and her carotid artery was cut.

[R.N.] died on October 22nd, 2019, as a result of the wounds suffered at the hands of Mr. Taylor and his knife.

{¶ 9} After making the requisite findings to impose the consecutive sentences, the court stated that it disagreed with defense counsel's position on the merger of offenses. It found that the retaliation offense did not merge with the involuntary manslaughter or felonious assault offense, because the evidence indicated a separate animus for the retaliation offense. The trial court sentenced Taylor to 11 years for involuntary manslaughter; eight years for felonious assault, to be served consecutively to the 11-year sentence; and 36 months for retaliation, to be served concurrently to the 11-year sentence, for an aggregate term of 19 years.

{¶ 10} On appeal, Taylor asserts the following assignment of error:

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE APPELLANT'S RETALIATION CHARGE WITH ONE OF THE OTHER TWO CHARGES.

{¶ 11} Taylor asserts that his act of retaliation was "the *exact same* action that constitute[d] the felonious assault (and the action that then evolved into involuntary manslaughter upon the death of the victim)." He also asserts that the harm resulting from the retaliation was "the *exact same* harm that was caused by the involuntary manslaughter." Taylor asserts that he stabbed R.N. as retaliation for her calling Children Services, and thus, the offenses were "committed simultaneously" and had the same motive: wanting to harm her because she called Children Services and made a report against him. According to Taylor, there was no separate animus, and "one of these events could not have occurred without the other," because his stabbing R.N. "could not have occurred without the underlying retaliation offense."

{¶ 12} The State responds that there should have been no merger of the involuntary manslaughter or felonious assault with the retaliation as related to R.N. The State argues that, while felonious assault "requires causing the serious physical harm to another, [retaliation] only requires the use of force or the threat of harm to persons or property." The State directs our attention to *State v. Thundercloud*, 5th Dist. Muskingum No. CT2018-0048, 2019-Ohio-2471, ¶ 52 (finding that felonious assault and retaliation could not be construed as allied offenses of similar import).

{¶ 13} The State asserts that, "since Taylor stabbed [R.N.] and [K.H.] seven separate times each, arguably he committed the offenses separately. The stabbing of [R. N.'s] carotid artery was not her only wound. The offense of Retaliation was complete after the first strike, but Taylor kept stabbing. * * * Each stab wound was a separate and distinct blow." According to the State, there was evidence in the record upon which the trial court could have reasonably concluded that the crimes were committed with a

separate animus.

{¶ 14} The State further asserts that the offenses were of dissimilar import, and therefore were not allied offenses, because they were "not alike in their significance or their resulting harm." The State directs our attention to *State v. Williams*, 2d Dist. Montgomery No. 27663, 2018-Ohio-1647, ¶ 24. (although defendant shot and killed the victim, his act of firing a handgun across the roadway itself also constituted discharging a firearm at or near a prohibited premises; the improper discharge offense placed numerous people at risk and harmed the public at large, whereas his murder conviction required harm to a particular victim and differed in the significance and the nature of the harm it addressed). The State argues that the "victim" of a retaliation offense is "more than a single official or witness, but the entire justice system," as evidenced by the General Assembly's classification of the offense of retaliation as "an offense against justice and public administration" in R.C. Chapter 2921, whereas involuntary manslaughter and felonious assault are classified as homicide and assault offenses and are contained in R.C. Chapter 2903. Thus, the State argues that the victims of the offenses were different, the offenses did not merge because they involved separate victims, and multiple punishments were permitted.

{¶ 15} Finally, the State asserts that retaliation and involuntary manslaughter as a result of felonious assault "are also not alike in their resulting harm. If the harm that results from each offense is separate and identifiable from the harm of the other offense, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions." According to the State, "R.C. 2903.04(A), via R.C. 2903.11(A), and R.C. 2921.05(A) have separate societal interests; the former statues

[were] enacted to protect human life, and the latter [was] enacted to protect the integrity of the justice system itself." The State argues that the harm that results from involuntary manslaughter as a result of felonious assault is death as a result of serious physical harm, whereas the harm that results from retaliation is a chilling effect on citizen participation in the justice system and interference with a primary function of our government's duty to keep its citizens safe by investigating and prosecuting criminal activity.

{¶ 16} We review a trial court's decision regarding merger of convictions for the purposes of sentencing under a de novo standard. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. Section 10, Article I of the Ohio Constitution prohibits multiple punishments for the same offense. *See also State v. Mpanurwa*, 2d Dist. Montgomery No. 27357, 2017-Ohio-8911, ¶ 17.

{¶ 17} R.C. 2941.25 governs multiple counts and provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 18} As this Court noted in *Mpanurwa*:

Two or more offenses may result in multiple convictions if any of the

following is true: "(1) the offenses are dissimilar in import or significance— in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.   This analysis is dependent upon the facts of each case because R.C. 2941.25 focuses on the defendant's conduct.   *Id.* at ¶ 26.

*Mpanurwa* at ¶ 18.

**{¶ 19}** R.C. 2921.05(A) proscribes retaliation and provides:

No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

**{¶ 20}** R.C. 2903.04(A) proscribes involuntary manslaughter and provides:   "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony," in this case felonious assault.   R.C. 2903.11(A)(1) provides: "No person shall knowingly * * * [c]ause serious physical harm to another * * *."

**{¶ 21}** We conclude that the trial court correctly determined that retaliation and involuntary manslaughter (as a proximate result of felonious assault) were not subject to merger, since the statutes at issue protect distinct interests.   As the State asserts, the

offense of retaliation is codified in R.C. Chapter 2921, which is entitled "*Offenses Against Justice and Public Administration.*" (Emphasis added). In other words, by definition, retaliation offends the processes of justice and public administration, including law enforcement. Involuntary manslaughter is codified in R.C. Chapter 2903, which governs homicide and assault and protects human life.

**{¶ 22}** Focusing on Taylor's conduct in the course of his offenses, we conclude that Taylor committed retaliation hoping to avoid any consequences from the ensuing investigation into allegations of child abuse against him, and he committed felonious assault to cause serious harm to R.N., consistent with an ongoing pattern of abuse, as witnessed by K.H. and reported in the PSI. In other words, Taylor caused R.N.'s death as a proximate result of committing felonious assault against her, and he further acted to thwart the judicial process. The administration of justice was victimized, and the facts herein establish a distinct animus for each offense. The consequences of the offenses were dissimilar as well; R.N. lost her life, and the interests of justice were impeded by the loss of a potential witness to an alleged crime against a child. Based upon the foregoing, the trial court correctly determined that the offenses were not subject to merger. Accordingly, Taylor's assignment of error is overruled.

**{¶ 23}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis

Adam J. Arnold
Hon. Michael W. Krumholtz